**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LAWRENCE J. KANSKY, DPM, JD,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:13-1234** |
| **v.** | : | |
| | | **(JUDGE MANNION)** |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA, BUREAU OF** | | |
| **OCCUPATIONAL AFFAIRS, *et al.*,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Pending before the court is the defendants' motion for summary judgment. (Doc. No. 5). Based upon the court's review of the motion and related materials, the defendants' motion will be granted.

By way of relevant background, the plaintiff filed the instant action in the Court of Common Pleas of Luzerne County on March 26, 2013. Service was made upon the defendants on April 8, 2013. On May 7, 2013, the action was removed to this court. (Doc. No. 1).

On June 28, 2013, the defendants filed the pending motion for summary judgment, (Doc. No. 5), along with a statement of material facts, (Doc. No. 7). A brief in support of the defendants' motion was filed on July 15, 2013, (Doc. No. 14), along with supporting exhibits, (Doc. No. 16). On July 31, 2013, the plaintiff filed a response to the defendants' statement of facts, (Doc. No. 26), as well as a brief in opposition to the defendants' motion for summary judgment, (Doc. No. 27). The defendants filed a reply brief on August 14, 2013. (Doc. No. 30).

Summary judgment is appropriate "if the pleadings, the discovery

[including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir.

2003); see also Celotex, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman-La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

In his complaint, the plaintiff alleges that he practiced podiatry for approximately twenty-four years in Luzerne County, Pennsylvania. On or about October 25, 2007, he alleges that he retired from the practice of podiatry by way of a letter to the State Board of Podiatry, ("Board"), and by the physical act of returning his podiatry license with this letter. The plaintiff alleges that he retired so that he could attend law school and become an attorney.

At the time he sent his letter of retirement, the plaintiff alleges that his license was in "active" standing with the Board and the Pennsylvania Bureau of Professional and Occupational Affairs, ("BPOA"). Upon receipt of his written request, the plaintiff alleges that the Board and the BPOA placed his

license on "inactive" status and placed his license on file in Harrisburg, Pennsylvania.

On November 2, 2007, the plaintiff alleges that defendant Basil Merenda, then Commissioner of the BPOA[1], signed and sent him a letter which indicated that his license was on "inactive" status and informed him of the terms upon which he could "reactivate" his podiatry license. In order to reactive his license, the plaintiff alleges that the letter stated that he would need to complete a "Reactivation Application" and submit it along with evidence of completion of the required continuing medical education, ("CME"), credits and the appropriate fees.

In the Spring of 2008, the plaintiff alleges that the Board falsely reported to the National Data Bank on health care providers and to the press that he had voluntarily surrendered his podiatry license due to disciplinary action. Plaintiff alleges that this was legally impossible as he had already inactivated his licence when he retired on October 25, 2007. In order to voluntarily surrender his license, the plaintiff alleges that he would had to have completed a special form with the words "voluntary surrender of license" on it and physically returned his "active" license to the respective Board or Bureau. Since his license was "inactive" due to his retirement, the plaintiff alleges that he could not have voluntarily surrendered an "active" license. Moreover, the plaintiff alleges that at no time did the Board ask him to

---

[1]The defendants' materials indicate that defendant Merenda has since retired.

4

voluntarily surrender his license, nor did the Board ever supply him with the special voluntary surrender form to complete, sign and submit back to them as required.

In 2011, the plaintiff alleges that he graduated with Honors from the University of Baltimore, School of Law, passed the Pennsylvania Bar Exam, and began the practice of law. As part of his legal licensing, the plaintiff alleges that he was required to pass a rigorous and detailed character and fitness examination.

In the Fall of 2012, the plaintiff alleges that he decided to reactivate his podiatry license and expended money and time to acquire fifty hours of CME credits in order to do so. On or about November 5, 2012, the plaintiff alleges that he submitted a completed "Reactivation Application," with copies of his CME certificates and a check in the amount of $395 for appropriate fees. In return, the plaintiff alleges that he received an undated and unsigned generic form letter from the Board stating that, since he had voluntarily surrendered his podiatry license due to disciplinary action, he needed to petition the Board in writing to request reinstatement.

On November 17, 2012, the plaintiff alleges that he faxed a letter to the Board counsel explaining that he never voluntarily surrendered his license. When he received no response, on December 17, 2013, the plaintiff alleges that he sent a second letter requesting the status of his Reactivation Application. Again, the plaintiff alleges he received no response. On January 7, 2013, the plaintiff alleges that he faxed and sent by mail a third letter which

put Board counsel on notice that he would be filing a lawsuit "against all those who have wronged him from 2007 to the present." On January 29, 2013, the plaintiff alleges that he received a response from the State Board of <u>Pharmacy</u> Counsel, which had no relationship with the plaintiff, and so he ignored the letter.

The plaintiff alleges that the BPOA and/or the Board and all its associated individuals, agents, employees, and Board members ignored his inquiries concerning the reactivation of his license and unlawfully prevented him from practicing podiatry. The plaintiff alleges that he has suffered significant damages since November 2, 2007, as a result of the defendants' actions.

Based upon the above allegations, the plaintiff sets forth eight counts in his complaint: Count I, Negligence; Count II, Fraud or Negligent Misrepresentation; Count III, Abuse of Process; Count IV, Intentional or Negligent Interference of Prospective Economic Advantage; Count V, Violation of State and Federal Due Process Rights; Count VI, Civil Conspiracy; Count VII, Intentional Infliction of Emotional Distress; and Count VIII, Punitive Damages. The plaintiff is seeking compensatory and punitive damages, as well as immediate reactivation of his podiatry license.

In response to the allegations set forth in the plaintiff's complaint, the defendants have submitted a statement of material facts supported by various exhibits which confirms that the plaintiff did, indeed, practice podiatry in Luzerne County, Pennsylvania, for approximately twenty-four years.

6

Moreover, as alleged by the plaintiff, on October 25, 2007, the plaintiff sent a letter to the Board stating that he completely and permanently retired from the practice of podiatry and enclosed his current license. The plaintiff further requested that his license be placed on permanent inactive status.

By correspondence dated November 2, 2007, defendant Merenda informed the plaintiff that his request to place his license on inactive status had been processed[2]. The plaintiff was advised that his license was placed on inactive status and that he may reactivate his license at any time by contacting the Board Office for a Reactivation Application, at which time he would be required to submit the completed Reactivation Application, evidence of the required CME and appropriate fees.

On March 24, 2008, the plaintiff signed a "Consent Agreement and Order," ("Agreement")[3]. The Agreement was subsequently signed by the

---

[2]The plaintiff denies this fact stating that defendant Merenda responded "by written agreement," which the plaintiff later characterizes as binding upon the defendants. However, it is clear that defendant Merenda's letter to the plaintiff is not a binding agreement at all, but simply an acknowledgment of plaintiff's request to be placed on inactive status and an advisement that the request was granted. Any attempt by the plaintiff to characterize the correspondence as anything else is not well-taken by the court.

[3]The plaintiff does not dispute that he signed the Agreement but claims, with no support, that he did so "under duress and severe threats." As a "layperson," the plaintiff claims that he "did not willingly, knowingly, or intelligently consent to anything because of the duress and threats that [he] was under, and because he lacked any legal background." The plaintiff further claims that he "could not understand the contents of this second Agreement because [he] was not yet a lawyer." (Doc. No. 26, Ex. A, ¶36).

(continued...)

BPOA counsel on April 13, 2008, and was adopted by the Board on April 16, 2008.

The Agreement sets forth that the plaintiff admitted to the following facts:

a. [Plaintiff's] license is on inactive status and may be reactivated thereafter upon the filing of the appropriate documentation and payment of the necessary fees.

b. [Plaintiff's] last known address on file with the Board is 20th and Church Street, Hazleton, PA 18201 and his current home address is [redacted by the court].

c. Law Enforcement agencies investigated [Plaintiff] relating to ordering hydrocodone.

d. The investigation related to the period between January and June, 2006, a period of less than six months.

e. At all times [plaintiff] cooperated with the Law Enforcement agencies.

f. [Plaintiff] acknowledges that he did not maintain the required record keeping for the administration and dispensing of the hydrocodone.

g. [Plaintiff] acknowledges self medication relating to, among other things, extensive dental procedures.

h. On November 20, 2007, in the Court of Common Pleas of Luzerne County, at docket number CP-40-CR-0002425-

---

[3](...continued)

Plaintiff's claim of ignorance with respect to the Agreement, which occurs throughout his responses to the defendants' statement of facts is disingenuous, at best. The plaintiff is an accomplished podiatrist of twenty-four years, who went on to become an Honors graduate from the University of Baltimore, School of Law shortly after signing the Agreement at issue. Upon review, the Agreement is a six-page, simply stated and straightforward document. Moreover, at the time the plaintiff entered into and signed the Agreement, he admits (and a copy of the Board's order dated April 16, 2008, approving the Agreement reflects) that he was represented by counsel. There is no claim by the plaintiff that his counsel was in any way inadequate or incompetent and, surely, counsel was able to explain to the plaintiff the legal nature and consequences of the Agreement. (Doc. No. 16, Ex. 1, Attachment; Doc. No. 26, ¶12).

2007, [Plaintiff] pled no contest to one felony count of acquiring a controlled substance by misrepresentation, fraud, forgery, or deception, with regard to hydrocodone, a schedule III controlled substance, in violation of 35 P.S. §780-114, §A12.

i.   On November 20, 2007, in the Court of Common Pleas of Luzerne County, at docket number CP-40-CR-0002425-2007, [Plaintiff] was ordered to complete six months of probation without verdict, and the charges are subject to potential dismissal following compliance with a probationary period, pursuant to the Drug Act.

j.   In October of 2007, [Plaintiff] sent a letter to the Board stating that he completely and permanently retired from the practice of podiatry and additionally requesting that his license be placed on permanent inactive status.

k.   [Plaintiff] agrees to the continued voluntary surrender of his license to practice podiatry in Pennsylvania and has entered into this Agreement to formalize that surrender.

(Doc. No. 16, Ex. 1, Attachment) (citations to documents attached to the Agreement omitted).

The Agreement further stated that "[i[ntend[ing] to be legally bound, the participants consent to the issuance of the following Order in settlement of the matter."[4] The Order which incorporates the Agreement contained specific stipulations, terms and agreements regarding the voluntary surrender of the plaintiff's podiatry license, as well as specific terms that the plaintiff consented to regarding conditions that must be satisfied prior to the reactivation of his license. These included:

a.   [Plaintiff's] license to practice podiatry, is subject to action

---

[4] The plaintiff denies that he intended to be legally bound by the Agreement or that he consented to the issuance of the subsequent order by the Board. However, the Agreement, which the plaintiff entered into and signed while represented by counsel, speaks for itself. This applies to any specific provision of the Agreement cited to by the defendants and denied by the plaintiff.

under the Act at §42.16(a)(2) by pleading no contest and receiving probation without verdict in the disposition of one felony charge.

b. [Plaintiff] consents to the continued voluntary surrender of [Plaintiff's] license to practice podiatry in this Commonwealth, License No. SC002602L.

c. The Board recognizes and accepts the voluntary surrender of [Plaintiff's] license to practice podiatry in this Commonwealth, License No. SC002602L.

d. Under adoption of this Consent Agreement and Order, [Plaintiff] shall continue to cease and desist from the practice of podiatry, and shall not indicate any ability to practice the profession in this Commonwealth in any manner whatsoever. [Plaintiff] shall immediately surrender his wall certificate and any other documentation of licensure to Steven Wenberg, Counsel, State Board of Podiatry.

e. This Order constitutes public action. This action shall be reported to entities including, but not limited to, the National Practitioner Data Bank, the Healthcare Integrity and Protection Data Bank, if applicable, the Federation of State Medical Boards, the licensing authority of any state or jurisdiction, government entities, and any private or public health care facility.

f. Following a period of at least three years, from November 2, 2007, [Plaintiff] may apply for reinstatement of [Plaintiff's] license to practice podiatry and surgery in the Commonwealth of Pennsylvania. Prior to the Board's consideration of any petition for reinstatement, [Plaintiff] shall undergo a mental and physical examination conducted by a Board approved psychiatrist who shall submit a written report of [Plaintiff's] evaluation to the Board without delay, and who shall be prepared to testify before the Board, if necessary. [Plaintiff] shall execute releases for any and all of his medical, treatment, and health records to the evaluator and shall cause his health care providers to submit his records directly to the evaluator. [Plaintiff] shall file any application for reinstatement in writing with the Board, along with a request for hearing. Should the Board choose to reinstate [Plaintiff's] license to practice podiatry, it may reinstate the license subject to any terms and conditions that the Board in its sole discretion deems to be reasonable and appropriate, after reasonable notice and a hearing. [Plaintiff] further acknowledges that he may not apply for reinstatement prior to any period of automatic suspension which may be statutorily mandated as a result of any additional criminal action in this matter.

10

(Doc. No. 16, Ex. 1, Attachment).

In the Agreement, the plaintiff waived his right to an administrative hearing in the matter and rights related to the hearing, as well as his appeal rights. Further, the plaintiff verified that the facts and statements set forth in the Agreement were true and correct to the best of his knowledge, information and beliefs and that the statements made in the Agreement were made subject to the criminal penalties of 18 Pa.C.S. §4904 relating to sworn falsification to authorities.

As alleged by the plaintiff, on November 5, 2012, he submitted an application to reactivate his podiatry license. The Board responded to the plaintiff on November 8, 2012, informing him that because he voluntarily surrendered his license due to a previous action, he would need to outline for the Board why his license should be reinstated, as well as provide proof that he is in compliance with any and all consent agreements/orders issued to him by the Board. Plaintiff responded on November 17, 2012, admitting that there was an Agreement on file with the Board, but claiming that it was invalid because it concerned an issue that occurred while he was retired and was in direct violation of the Board's November 2, 2007, letter which indicated that he would not receive any mailings by the Board[5].

---

[5]The statement that the plaintiff "will not receive any mailings from the Board" while his license was on inactive status and the information pertaining to the reactivation of the plaintiff's licence in the November 2, 2007, correspondence clearly related only to his placement on "inactive" status (continued...)

On January 7, 2013, the plaintiff sent correspondence to Board Counsel informing counsel that he never voluntarily surrendered his podiatry license and that the Board was illegally preventing him from practicing podiatry and had committed multiple acts of fraud or misrepresentations.

On January 29, 2013, Kerry Maloney, who was counsel to both the State Board of Podiatry and the State Board of Pharmacy, sent the plaintiff a letter informing him that the Consent Agreement which the plaintiff signed on March 24, 2008, contained specific items that had to be addressed prior to the reactivation of his license[6]. To date, the plaintiff has not followed the procedures outlined in the Agreement in order to have his podiatry license reinstated.

In support of their motion for summary judgment, the defendants raise several arguments; however, the court need only address the first of these as

---

[5](...continued)
when the plaintiff informed the Board that he was retiring. This occurred prior to the initiation of criminal charges against the plaintiff and his subsequent plea of no contest to those charges. The plaintiff's prior placement on "inactive" status and related information was incorporated into and superceded by the Agreement entered into by the plaintiff and the Board at the conclusion of his criminal proceedings.

[6]As indicated in the defendants' materials, the correspondence was inadvertently signed by Attorney Maloney as counsel for the State Board of Pharmacy; however, he also served as counsel for the State Board of Podiatry. Although the plaintiff alleges that he ignored the letter because it was signed by counsel for the State Board of Pharmacy with which he had no affiliation, the correspondence clearly addresses the plaintiff's situation with the State Board of Podiatry. Plaintiff, who by then was a practicing attorney, should have recognized this and responded accordingly.

it finds that it is dispositive of the instant action. The defendants argue that the claims raised by the plaintiff in the instant action are barred by the Agreement which was entered into between the plaintiff and the BPOA in settlement of the disciplinary proceedings brought against the plaintiff by the BPOA as a result of his criminal proceedings.

Settlement agreements are interpreted as binding contracts and are governed by the ordinary principles of contract law. In re Cendant Corp. Litig., 233 F.3d 188, 193 (3d Cir. 2000). An agreement will be found valid if "the parties mutually assent to the terms and conditions of the settlement." Transport Intern. Pool, Inc. v. Alternative Transport, Inc., 2008 WL 2550598 (E.D.Pa. June 25, 2008) (quoting Main Line Theatres, Inc. v. Paramount Film Distrib. Corp., 298 F.2d 801, 803 (3d Cir. 1962)). Where the court finds that the parties have voluntarily entered into an agreement to settle an action, it is binding upon the parties irrespective of whether it was made in the presence of the court. Rivello v. First National Community Bank, 2013 WL 1248259 (M.D.Pa. 2013) (citing Green v. John H. Lewis & Co., 436 F.2d 389, 390 (3d Cir. 1970)).

> The [United States Court of Appeals for the] Third Circuit recognizes a strong public policy favoring settlements of disputes, the finality of judgments and the termination of litigation. See American Iron & Steel Institute v. Environmental Protection Agency, 560 F.2d 589 (3d Cir. 1977); Pennwalt Corp. v. Plough, Inc., 676 F.2d 77, 80 (3d Cir. 1982) . . . "Voluntary settlement of civil controversies is in high judicial favor. Judges and lawyers alike strive assiduously to promote amicable adjustments of matters in dispute, as for the most wholesome of reasons they certainly should." Pennwalt, 676 F.2d at 80 . . .

Colella v. Univ. of Pittsburgh, 569 F. Supp. 2d 525, 530 (W.D. Pa. 2008)

(quoting In re Nazi Era Cases Against German Defendants Litig., 236 F.R.D. 231, 241-42 (D.N.J. 2006) (additional citations omitted)). See also Standard Steel, LLC v. Buckeye Energy, Inc., 2005 WL 2403636 *2 (W.D.Pa. 2005) ("Settlement agreements are encouraged as a matter of public policy because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by courts.") (citing D.R. by M.R., 109 F.3d at 901).

In the instant action, the plaintiff sent a letter to the Board on October 25, 2007, requesting that his license be placed on permanent inactive status as he was completely and permanently retiring from the practice of podiatry. The Board sent a response to the plaintiff on November 2, 2007, indicating that his request had been processed and that his license had been placed on inactive status. The plaintiff was advised that he could reactive his license by submitting a Reactivation Application with evidence of the required CME credits and the appropriate fees.

Undoubtedly while this exchange was occurring, although he fails to so allege in his complaint, the plaintiff was aware that he was under investigation for fraudulently obtaining hydrocodone[7]. At or around this time, the plaintiff was, in fact, charged with fraudulently obtaining hydrocodone, and on

---

[7]The plaintiff alleges in his complaint that he retired so that he could attend law school and become an attorney. However, he indicates in his November 17, 2012, correspondence to Board counsel that he retired "because of a series of adverse injustices experienced by [him]." (Doc. No. 16, Ex. 2, Attachment). Moreover, the Agreement entered into and signed by the plaintiff reflects that he was aware that he was under investigation and was cooperating with law enforcement agencies.

November 20, 2007, he pled no contest to one felony count of acquiring a controlled substance by misrepresentation, fraud, forgery or deception with regard to hydrocodone. The plaintiff was ordered by the Luzerne County Court to complete six months of probation without verdict, with the charges subject to potential dismissal following compliance with probation.

In addition to his failure to mention in his complaint the facts surrounding his criminal proceedings, the plaintiff also failed to mention that, in March 2008, he entered into and signed the Consent Agreement discussed above in settlement of disciplinary proceedings brought against him by the BPOA as a result of his criminal proceedings. The Agreement was signed by Board counsel and ultimately the Board issued the Order on April 16, 2008.

Although he admits to signing the Agreement, the plaintiff argues in response to the defendants' motion for summary judgment that the letter of November 2, 2007, which he refers to as "the first agreement" is the only legal agreement because there was no meeting of the minds when he was "forced" to sign the Consent Agreement. In entering into the Agreement with the BPOA, the plaintiff, who was represented by counsel, agreed to all of the facts and terms therein. He waived his right to an administrative hearing in the matter, his rights related to a hearing, and his appellate rights. The court agrees with the defendants that there is nothing in the record, other than the plaintiff's own unsupported claims, which indicates that the plaintiff did not enter into the Agreement to settle the disciplinary action against him voluntarily and with full knowledge of its consequences. Despite his claims to

the contrary, the record is devoid of any evidence of duress or threats upon the plaintiff which "forced" him into entering into and signing the Agreement.

The plaintiff further argues that the Agreement is "invalid because it concerns an issue that occurred while [he] was retired and it is in direct violation of the Board's November 2, 2007 letter which states that [he] will not receive any mailings from the Board." He argues that the Consent Agreement is a "mailing from the Board" and is therefore invalid. The court has previously addressed this argument in notes to this decision, See nn. 2, 5, and will not now give the argument any further consideration other than to say that it is clearly without merit.

Next, the plaintiff argues that the agreement is invalid because he was on "inactive" status at the time of the Agreement and he could not have "voluntarily surrendered" a license which he did not have. This argument is negated by the very terms of the Agreement into which he entered. In the Agreement, the plaintiff acknowledged that he was on inactive status, he agreed to voluntarily surrender his license, and indicated that he was entering into the Agreement in order to formalize the surrender.

Finally, the plaintiff argues that the Agreement has no legal effect because the Agreement provides that it "shall have no legal effect unless and until the office of General Counsel approves the contents as to its form and legality." The plaintiff argues that he was never notified that counsel approved the Agreement and therefore it is not enforceable against him. Contrary to plaintiff's argument, the defendants' materials establish that the Agreement

16

is signed by Bernadette Paul, Prosecuting Attorney for the Department of State, and employee of the Governor's Office of General Counsel. As the Agreement was approved by General Counsel, it is given full legal effect.

In further considering the plaintiff's complaint, despite his allegations that the Board "falsely" reported to the National Data Bank on health care providers and to the press that he had voluntarily surrendered his podiatry license due to disciplinary action taken against him, the Agreement signed by the plaintiff specifically provides that the Board order formalizing the voluntary surrender of the plaintiff's podiatry license to which the plaintiff consented constituted "public action" and that this action "shall be reported to entities including, but not limited to, the National Practitioner Data Bank, the Healthcare Integrity and Protection Data Bank, if applicable, the Federation of State Medical Boards, the licensing authority of any state or jurisdiction, government entities, and any private or public health care facility."

Moreover, despite the plaintiff's allegations that the defendants unlawfully failed to reactivate his podiatry license, he fails to include in his complaint that the Board Order, which incorporates the Agreement, contained specific stipulations, terms and agreements regarding the surrender of the plaintiff's podiatry license, as well as specific terms that he consented to regarding conditions that must be satisfied prior to the reactivation of his license, none of which have been met by the plaintiff. These conditions provided that, following a period of at least three years from November 2, 2007, the plaintiff could apply for reinstatement of his license to practice

podiatry and surgery in the Commonwealth of Pennsylvania. They further provided that, prior to the Board's consideration of any petition for reinstatement, the plaintiff "shall undergo a mental and physical examination conducted by a Board approved psychiatrist" and that he "shall file any application for reinstatement in writing to the Board, along with a request for a hearing." In addition, the plaintiff agreed that should the Board choose to reinstate his licence, "it may reinstate the license subject to any terms and conditions that the Board in its sole discretion deems to be reasonable and appropriate, after reasonable notice and a hearing."

In addition, although the plaintiff alleges that the defendants ignored his attempts to reactivate his license, the record establishes otherwise. In fact, the plaintiff was informed on November 8, 2012, of the requirements he needed to fulfill to reinstate his license to conform to the provisions of the Agreement and Order. Again, on January 29, 2013, the plaintiff was informed of these requirements. The plaintiff admits to receiving both letters. With respect to the correspondence sent to him on January 29, 2013, which specifically addressed his reactivation process, the plaintiff states that he ignored it simply because it was signed by Mr. Maloney as counsel for the Board of Pharmacy, as opposed to the Board of Podiatry, although he was counsel for both.

In considering all of the foregoing, whether the plaintiff likes it or not, he is legally bound by the terms of the Agreement and, as such, he is barred from proceeding with the instant action. See D.R., 109 F.3d at 901 (permitting

parties to void settlement agreements because the agreement becomes unpalatable "would work a significant deterrence contrary to the federal policy of encouraging settlement agreements."). As such, the defendants' motion for summary judgment will be granted.

An appropriate order shall issue.



s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date:  March 6, 2014**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2013 MEMORANDA\13-1234-01.wpd

19